NO. 12-4468

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### LINDA MENGELKAMP,
*Plaintiff-Appellee,*

v.

### LAKE METROPOLITAN HOUSING AUTHORITY, *et. al.*
*Defendants-Appellants*,

**On Appeal from the United States District Court
for the Northern District of Ohio,  Eastern Division
Case No.  1:11-CV-2589
HON. JAMES S. GWIN**

### APPELLEE'S APPENDIX

Robert P. Sweeney (Oh. Bar No. 0026605)
ROBERT E. SWEENEY CO., L.P.A.
55 Public Square, Ste. 1500
Cleveland, Ohio  44113
(216) 696-0606
rps@rescolaw.com

Attorney for Plaintiff-Appellee

Pursuant to Sixth Circuit Rule 30(b)(2)(b) the following are exhibits admitted at time of trial and necessary for the court to understand the issues and decide the appeal. These exhibits are all reflected as being admitted, within docket entry *Witness and Exhibit List from jury trial,* RE 77 Page ID # 1647-1655.

## TABLE OF CONTENTS

| Plaintiff's Exhibit No. | Description of Exhibit | App. Page # |
|---|---|---|
| Pl. Ex. 6a | Corrective Action Notice of May 17, 2010 | 1-4 |
| Pl. Ex. 6b | Statement of Martin attached to Corrective Action Notice | 5-6 |
| Pl. Ex. 6c | Statement of Srpan attached to Corrective Action Notice | 7-8 |
| Pl. Ex. 6d | Statement of Ilacqua attached to Corrective Action Notice | 9 |
| Pl. Ex. 6e | Statement of Hannah-Coe attach to Corrective Action Notice | 10-13 |
| Pl. Ex. 6f | Statement of Molnar attached to Corrective Action Notice | 14-18 |
| Pl. Ex. 6g | Statement of Cody attached to Corrective Action Notice | 19-21 |
| Pl. Ex. 7 | Memo to England Personnel File in re Knotts complaint | 22 |
| Pl. Ex. 9 | LMHA job description for "Administrative Assistant" | 23-26 |
| Pl. Ex. 11 | Mengelkamp Performance Review of 3/8/2010 | 27-38 |
| Pl. Ex. 14 | Final Remedial Action Recommendation | 39-41 |
| Pl. Ex. 14a | Draft and email chain with Conley as to remedial action | 42-50 |
| Pl. Ex. 15 | Knotts email to Conley of May 15: "gender issues" | 51 |
| | | |

| Plaintiff's Exhibit No. | Description of Exhibit | App. Page # |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Pursuant to 6th Cir. Rule 30(b)(2)(3) counsel for Appellee hereby certifies that the documents in the Appendix are properly part of the record.

Respectfully submitted,

/s/ Robert P. Sweeney
ROBERT P. SWEENEY (0026605)
ROBERT E. SWEENEY CO., L.P.A.
Attorney for Plaintiffs
55 Public Square, Ste. 1500
Cleveland, Ohio 44113
(216) 696-0606
rps@rescolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 9 , 2013 I electronically filed the foregoing APPELLEE'S APPENDIX with the Clerk of the Sixth Circuit Court of Appeals using the ECF system which will send notification of such filing to the following:

William P. Lang – william.lang@williamlangattorney.com

Suzanne F. Jucaitis – suzanne.jucaitis@williamlangattorney.com

Counsel for Appellants: Lake Metropolitan Housing Authority and Steven Knotts

/s/ Robert P. Sweeney
ROBERT P. SWEENEY (0026605)
ROBERT E. SWEENEY CO., L.P.A.
Attorney for Plaintiffs
55 Public Square, Ste. 1500
Cleveland, Ohio 44113
(216) 696-0606
rps@rescolaw.com



**Lake Metropolitan Housing Authority**
189 First Street · Painesville, Ohio 44077
440-354-3347 · 440-354-5008 fax



### Notice of Corrective Action
### May 17th, 2010

**Linda Mengelkamp, Administrative Office Manager**

**LMHA Personnel Policy Breaches:**
- #1 not treating employees with dignity, courtesy, professionalism and respect.
- #4 Insubordination, not following the oral and written directives of your supervisor
- #6 Failure to satisfactorily perform assigned duties
- #9 Failure to perform job responsibilities and conduct yourself with honesty and integrity

Please see the following documented incompetency and failures

1) Linda, I was shocked by what was revealed to me last week out of desperation by a number of our staff. A number of our staff members came to me, at least one with tears in their eyes, due to your failure to perform duties for the position in which you are employed. I explained to them that to effectively deal with these serious allegation, they should put them in writing – specifically, that your relationship with the HCV Manager has lost your credibility in the eyes of most of the office staff. I have attached a number of written signed incident reports and e-mails from 5 office employees, including one from our assistant HCV manager and our Operations Manager. I have been told that others are afraid to put anything in writing. You can also see repeatedly that employees state that when they have gone to you in confidence you have failed them by disclosing this information to their supervisor. Their concern is that your loyalty is with the HCV manager, not the operation of the Agency. These reports include items such as "terrified" of their supervisor" and "hostile work environment". The attached reports have clearly portrayed a "hostile" work environment created by your failure to be objective in dealing with issues that staff members have raised or are afraid to raise with you because of your relationship with the HCV Manager. You failed to stay objective with the HCV manager and you also failed to inform me of these issues. Also attached is a claim that you also broke confidence of your position with the PH assistant. At a minimum we must always try to provide a safe work environment for all employees. Your failure to perform your duties has allowed a hostile environment where employees are terrified.

**Case No.
1:11-CV-02589**

**PLAINTIFF 6a**

Appendix PG. 1

2) Linda, you have been grossly insubordinate in a number of ways. It is also quite apparent that you have been working to undermine me as the Executive Director of LMHA. This is totally unacceptable behavior.

3) Regarding the OPERS issue. I was briefed on this issue, on Monday 4/12/10. This meeting confirmed that this was a valid issue and a major one which could take a large amount of time to solve. I called a managers meeting at approximately 9:20 AM that day to inform all of the managers of this issue. When this item was explained, the HCV manager began raving about how could this happen, and that we messed with her family and now her money. She went on to state a number of times very loudly that "we need leadership here". There was no mistake by at least 3 of the managers present this was clearly blatantly disrespectful to me and should have been embarrassing to her. However, when I asked your view on this you stated that she was just upset and that you saw no disrespect. I think I even stated something about her charade because it was clear to me that she was already well aware of this confidential matter. I had suspected that you were disclosing too much information to the HCV manager and that this was going on for months. I brought this issue up to you on a number of occasions. You would state that I was paranoid. However, it seems by the content and sheer number of incident reports I have attached that I had very good reasons to be concerned.  Of significant concern to me is the comment, "Good employees are looking to leave the agency because of Trish and her controlling relationship with the Office Manager."

4) Many items began to change shortly after I provided your review. In fact, I agree with the attached report where one staff member indicated that there has been a terrible turn of events over the last couple months. The constant "drama" that you have been party to, has been wearing on the agency as described in the attached documentation. In March, I went to speak to the HCV Manager and she stated she wanted to go to the HR department. The main issue which started this was how she claimed that I was in a 'rage" during a managers meeting when she brought up the issue of security in the building. You agreed with her off-base description of "rage" in contrast with three of the other managers present who indicated that I was in no way showing signs consistent with a person in a"rage". The HCV manager's next ridiculous assertion was that I did not like her because she grew up poor, and yet when that did not work you just kept going. The most recent allegation that I treat women differently than men was clearly incorrect at that time, and now it is clear that you were supporting the HCV Manager and working together to undermine me and the positive work of the LMHA. Because of your unprofessional allegiance at all costs to your friend, you allowed her ridiculous and unsubstantiated claims against me to drain time and resources from the Authority. Again, this shows your unprofessional behavior and to what extent you are willing to blindly support your friend and undermine the Executive Director and our positive works for constituents. I also pointed out examples of how I had provide positive encouragement and had given the HCV manager very good reviews and opportunities including inviting her to an event for which I personally paid to illustrate that I treat everyone fairly. I fail to see any base for the claim that I treat males different that females. One report includes the following statement in regards to the HCV Manager, "I believe she has a bossy and

2

overbearing personality but disrespect towards the ED in the presence of the other Manager's is totally unprofessional. I would sit in disbelieve because Steve would be very calm and unaffected by her behavior in these meetings. This happened on a number of occasions. Trish has intentionally tried to push Steve's buttons to get him to react." In addition, I find it very troubling the document placed in the HCV managers file which I never saw until this week while researching this issue. It states we all agreed, and this is a blatant misrepresentation of the true facts. I only agreed that I had been working a lot of hours and sought to keep the peace. Based upon the attached documentation and verbal complaints against you and the HCV Manager it is very clear that you have lost all objectivity. The attached reports portray a "hostile" work environment created by your failure to be objective in dealing with issues that staff members have raised or are afraid to raise with you because of your relationship with the HCV Manager. A direct quote

5) The Operations Manager had some concerns about the Public Housing manager which I forwarded to you and we scheduled a meeting to review these allegations. It was very clear to the OM and me that you had provided this confidential information to the PH manager well in advance of this meeting. This is confirmed in his attached incident report. By other staff members you are referred to as the HCV Manager's sidekick. A direct quote from the attached documentation is, "Trish leads and she (you) just seems to follow."

6) I have also attached your response to an e-mail about a HCV unit where a stove was left on and we were providing a stove and cleaning. The specific issue is that you recommended that I handle this issue even when I was in training. This item should have been handled by the HCV manager or yourself. To provide a written opinion for the Executive Director while in training is absurd. Again, this shows your allegiance to the HCV manager and failure to work as a team.

**Conclusion**

Linda, the above paints a very serious picture of gross insubordination along with complete disrespect for not only me, but also the very employees that you as the Administrative Office Manager are supposed to be their Human Resource person. This has occurred to the point of your causing a hostile work environment where employees are terrified. We are here to serve the clients and work as a team, and you have failed at both.

**Action**

Due to the seriousness and number of the complaints and your failure to perform the duties for which you were hired, you are hereby being terminated from employment at

3

Lake Metropolitan Housing Authority, effective immediately. Given you are still on your probationary period, you are not afforded the opportunity to appeal this termination to the Board.

**Employee Comments:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

| | |
|---|---|
| _____ | _____ |
| Superior's / Manager's Signature / Date | Employee's Signature        Date |
| _____ | _____ |
| Superior's / Manager's Name      / Date | Employee's Name        Date |
| _____ | |
| HR Representative Signature      / Date | |
| _____ | |
| HR Representative Name      / Date | |

4

May 11, 2010

Steve,

This letter is meant to be in strictest of confidence. The reason for this letter is to give insight on the unfortunate situations that have been occurring within the HCV department and LMHA in general.

As the Assistant Manager to the HCV Department , it is very difficult for me to write this letter because Patricia England is my Supervisor.  Initially, I was very open to her being the Manager of our department and things were "all business" even though she knew very little about HCV and how it was run.  I do remember during the situation with Amber Martin, I tried to tell Steve (in so many words) that he should be very careful because things aren't always the way they seem.  This was in reference to Trish, not Amber.  I was in the office when Trish stated "we need to get rid of him" (Steve).  She was saying this to Amber with Erica Grimes-Mitchell and I In the office.  I believe that she has learned a lot but has totally removed the "professionalism" that she seemed to begin this management position with.  Her loud unprofessional behavior has and is affecting the whole agency.  Examples of this would be:  One of the LMHA interns, Erica Jones, who was originally hired September 2009 was tormented and terrorized by Trish.  I would apologize to Erica for Trish's behavior on numerous occasions because this young lady was only 21 years old and had just begun the "working world".  Erica Jones received inappropriate emails that were totally rude and unprofessional .  Trish was totally out of line when she yelled at the PH Manager regarding a situation with Erica Jones.  I was told by the PH Manager that she went to the Office Manager, Linda Mengelkamp and reported this incident.

I have witnessed a terrible turn of events within this agency over the last couple of months.  I have been at LMHA for almost 3 years now and have been through 2 other HCV Managers.  This agency and our department have come a long way.  But the constant "drama" is wearing on everyone's patience now.  The lack of professionalism by the HCV Manager is intolerable.  It is apparent to everyone that "LMHA" does not have a "true" HR department and that they would never take any issues to the Administrative Office Manager, Linda Mengelkamp because for some reason, Linda's loyalty is to Patricia England, not Steve Knotts.  For months, I would hear employees make comments like, "Trish should have Executive Director on her door".  I will admit that Patricia England did let you know that she was running things.  Pretty much, what she wants is how it will be.  As she's said to numerous employees that "everything comes back to me".  Meaning if you say something about anything, the other employees will tell her.  Trish, in my opinion, must be in control.  She intimidates most everyone in this authority.

Most importantly, I have witnessed blatant disrespect and insubordination by Patricia England towards Steve Knotts in Managers meetings over the last 3 months.  I believe she has an overbearing and bossy personality but disrespect towards the ED in the presence of other Manager's is totally unprofessional.  I would sit in disbelief because Steve would be very calm and unaffected by her behavior in these meetings.  This has happened on a number of occasions.  Trish has intentionally tried to push Steve's buttons to get him to react.  She has displayed verbal disrespect towards his authority in front of and to various front line staff of the HCV department.  Trish and Linda have said on numerous occasions that

5
(1)

Case No.
1:11-CV-02589
PLAINTIFF 6b

"Steve doesn't seem to realize that no one likes him"...that may or may not be true. But, the truth be told, no one can stand Trish either. The people in my department only give her respect because they have to....they fear for their jobs. Why didn't anyone say anything sooner? To who? Steve Knotts....he put her in this position. Linda MengelKamp....she's Trish's sidekick. Trish leads and she just seems to follow. So, what do you do? Just do your work and try to tolerate the nonsense.

The situation with the "alleged" sexual harassment by Scott Gleason from PHA-Web and Erica Peavy. I did not attend the "wrap up" meeting. But upon Erica's return to the building, she told me she walked out of JT Community Room first , then Scott and Tom Huth was behind them all. She told me that Scott hit her on the butt with a folder and then touched her hair. I told her to tell Linda. She said that she had already been down there but Linda's door was closed. We then went outside, Linda Ilacqua, Erica Peavy and I. Tom Huth came out to look for Erica. We were talking about it the situation and then I went back into my office. Later, Patricia asked me to write up an incident report, which I didn't refuse. I wrote it up and turned it into Linda MengelKamp. My understanding of this whole situation is that they, want to make Steve responsible for what Scott did or supposedly did. This is where I believe, things have gone to far! I believe Erica was instructed by Trish and or Linda to stay home the next day on Friday and act as if she was all devasted by what happened. From what I understand, no one actually saw Scott hit Erica on the butt with the folder. Tom only witnessed Scott touching her hair. I believe Trish is using Erica to get at Steve. Erica is a follower and I believe she is somewhat scared of Trish. Why didn't she say anything to Scott if he was making her feel uncomfortable? See, prior to this Trish was a fan of Tom's . She thought he would make a great ED. But because something was said to her about Tom stating that it was appropriate for her to speak to the ED the way she does, she developed a strong dislike for Tom.

Right, wrong or indifferent, Steve Knotts is still the Executive Director of Lake Metropolitan Housing Authority and deserves to be given the same respect they expect from the rest of us. We may not agree with everything he does or says but he holds the position.

Please understand that this is a serious situation going on at LMHA and needs to be addressed immediately. Good employees are looking to leave this agency because of Trish and her controlling relationship with the Office Manager.

Sincerely,

Melissa Martin

6
(ᴓ)

I have witnessed on numerous occasions, Patricia demeaning the authority of our Executive Director. This has occurred during regular meetings and also in one on one conversation with Patricia. With comments to the effect of "I run this agency" and "that she didn't have a boss". I feel that the lack of respect that she demonstrates toward her superiors affects our ability to respect her as our boss.

The lack of respect that she shows her staff is also disheartening. One day she will be on your side and the next, she'll be against you. It's almost a sense of uneasiness; you never know what kind of mood she will be in or what issue she will blame on one of us. This is also the reason why I believe Erica Jones quit. Erica was a very quick learner and I feel she would have been an asset to this agency; however, Patricia had something against her from the beginning. Erica even came to me numerous times in tears and asked, "What did I ever do to her? Why is she so mean to me?" I feel exactly where she's coming from; Lisa Schneckenberger did the same thing to me when I first started, luckily I had the strength to deal with it, but I can understand that Erica didn't want to put up with it anymore. Erica helped us tremendously and even started a project of correcting HAP contracts which she did wonderful at, she knew a lot about the HCV program from being an intern for 6 months, and could have easily transitioned into a position in the HCV department.

When we received word of the OPERS issue, Patricia encouraged us to attend the board meeting, however, the next day after the board meeting, she called us into her office for an "emergency meeting", where she began to lecture us on "how dare any of us attend the board meeting and make her look like she didn't have control of her staff". She continued the meeting by saying that she never wanted to hear again that she would go into someone's case file and pull an inspection just to make them look bad. This made no sense to anyone in the meeting, we had no idea what she was talking about; we all walked out of the meeting confused and on-edge. Considering that no one had any idea of what she was talking about, I think she could have approached it in a different way; instead of having a meeting with the entire HCV staff, she should have had a one-on-one meeting with that specific person she was referencing. By bringing the whole staff into her problem, it caused more headaches.

I find it hard to concentrate and produce efficient work when all I hear is Patricia talking and laughing in the halls/her office. I feel that we should be able to shut our doors in this instance so that she doesn't cause a distraction. I had a client in my office for their Recertification Appointment and Patricia proceeded to talk with Linda Mengelkamp, talking and laughing uncontrollably, to an extend that my client asked "who is that?!" I replied that she was the HCV Program Manager, my client then asked if she could shut the door, I responded yes. Not even a couple hours later, we received an e-mail that stated that our doors were to remain open at all times. The saying that comes to mind regarding this instance is, "we have bigger fish to fry", my door was closed for maybe fifteen minutes but it resulted in an e-mail having to be sent out to the entire agency.

Since Patricia and Linda Mengelkamp are such good friends, it makes it hard to go to Linda if there is a problem/concern. You almost know for a fact that as soon as you leave her office, she will be walking down to Trish to tell her everything that was just said. It creates a lack of privacy and honesty to the agency if we can't go to the person that we are supposed to be able to go to if we have a problem that needs addressed.

I enjoy my job thoroughly, but I feel under the direction of Trish, we won't get to where we need to be. I feel that we would be able to produce more efficient work if we didn't have to feel on-edge everyday and

7

Case No.
1:11-CV-02589

PLAINTIFF 6c

have the constant distractions of Trish's loud/rude conversations. Our day is consumed with issues that Trish brings us into, resulting in our work being put on hold.

Kristin Arpan.

May 12, 2010.

8

Dear Mr. Knotts,

I am writing this letter in strict confidence as I value my job with LMHA and do not want to deal with the wrath of my manager as I have in the past on numerous occasions. Let me start with Trish England the HCV manager who is very mean, crude, rude, loud, and so very unprofessional. One day she speaks to you and the next she gives you dirty looks as you pass in the hall. She is so loud and obnoxious that I have to close my door when having clients in my office and even then you can hear the heckling and laughing that constantly goes on in her office. As for my manager Eric Peavy she stated in front of Tom Huth and Melissa Martin what had supposedly happened with Scott from PHA Web in which I was not a witness to and yet she asked me to write up an incident after she went to Trish England for guidance as how to proceed. I do not want to be involved with this or any other goings on behind your back. Erica was in my office during OHAC and stated to me that she had your "balls in her pocket" and "could name her dollar figure" because Linda Menglekamp HR manager checked into this with our HR department Clemmons Nelson and also their attorneys. On the few occasions I have gone to Linda in confidence with concerns of mine she has always disclosed my discussion with Erica. The management is team is always in either Linda or Trish's office plotting as they cannot keep anything in confidence. On occasion even I have heard Trish brag about how she runs the show and have often wondered why Executive Director had not been placed on her door. I have also heard her say she thinks Linda Menglekamp would make a perfect ED. I am very appalled at the blatant disrespect that your managers have given you let alone in the presence of all of your employees. There is so much dysfunction in this agency that I could go on and on. As I stated before this is all given to you in the strictest of confidence and if you have any questions please feel free to ask.

Sincerely,

Linda Ilacqua

9

Case No.
1:11-CV-02589

PLAINTIFF 6d

May 10, 2010

Steve,

There are some issues going on in the HCV department that I feel you need to be made aware of. First, the noise level coming from the P.M.'s Office is getting louder on a weekly basis. I have had several appointments in the past few weeks that I have had to close my door for due to the level of laughing, cackling and overall volume. The constant "meetings" behind closed doors that echo the halls with laughter and general noise are becoming very distracting. This has been going on for a few months but has become increasingly worse.

Secondly, the professionalism, and I use that term loosely, is becoming non-existent. Ms. England's attitude towards you is becoming increasingly hostile and shows a blatant disregard for your position at L.M.H.A. of Executive Director. Our last HCV meeting Ms. England asked Ms. Mengehamp to "ask your boss" (I forget what) and Ms. Mengehamp replied "you mean your boss" Ms. England replied "NO, your boss". I thought this was extremely rude and showed a lack of respect. Last Wednesday Ms. England referred to you as "Jughead" right before she left for OHAC. On several occasions Ms. England has made comments on how she "runs the show"

10

Appendix PG. 10

Case No.
1:11-CV-02589
PLAINTIFF 6e

around here. It is very hard to have respect for your boss when that respect is not shown to others.

Also, the fluctuating mood of the HCV department is somewhat of a concern. One day Mrs. England is praising an individual and the next she is ignoring them and giving them the cold shoulder. This behavior then moves to talking about that individual to other co-workers.

When the payroll/OPERS incident happened a couple of weeks ago Mrs. England was asking all of the HCV Department if they were attending the Board Meeting. She was encouraging us to attend. Then, that Friday she called us all in her office and yelled at us. She told us that several got mad at her that "we were all planning on getting a group together and going to the next board meeting" and she told us we had better not do that! We all left her office with a confused look because Mrs. England was the one who encouraged us to attend in the first place! It is this constant hot/cold behavior that I cannot keep up with. It is too draining to be around. I strongly believe that is why Erica Jones quit h. m. H. A. Mrs. England's obvious rude behavior often had Mrs. Jones

in tears. The week before she came cher notice she was in tears asking "What did I do to make her to time?" I told her to keep her chin up and don't let anyone know that they are getting to her. What I wanted to tell her was to go see Ms. Mengekamp and let her know but I knew that would be a waste of time.

As you know I have put in a request to be an inspector for HQS. There were many factors to consider on whether I wanted to make a move into this position. The main reason I chose to do inspecting was that I can no longer stay in the office environment in the HCV department. I can no longer function amidst the backstabbing, gossiping, cattyness, fluctuating mood and undermining of authority that is running rampant through the HCV department. By taking the inspector position it was a way for me to maintain my employment with L.M.H.A but not be in the day to day office setting. I know these concerns should have been brought to the H.R. department but I do not feel comfortable that my concerns would be kept in confidence. I feel that Ms. Mengekamp's loyalty and friendship with Ms England supercedes her ability to remain impartial. I do not

17

want nor need to be its subject of
retaliation for voicing my concerns and
issues.

I feel that if you spoke with other
employees at L. M. H. A. you would find others
that share my concerns and feelings.


Sincerely,
Henry Hanna Col.

13

**Steve Knotts**

| | |
|---|---|
| **From:** | Gretchen Molnar |
| **Sent:** | Thursday, May 13, 2010 5:03 PM |
| **To:** | Steve Knotts |
| **Subject:** | Trish's Office |

For long periods of time she is in her office and it gets loud in there with the door shut with Linda M. and Erica P. I never dared disturb them. Also I have picked up on disrespectful jokes and inferences because they are very loud. Especially Trish. I do not feel I can go to Linda M. about any of the problems I have with Trish like having to put files on the floor let alone anything personal because I do not see any professional distance between them.

*Gretchen Molnar*

*HCJP  Certification Specialist 1*

*(440)354-3347 ext. 20*

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

1
l 4

**Case No.
1:11-CV-02589

PLAINTIFF 6f**

## Steve Knotts

| | |
|---|---|
| From: | Gretchen Molnar |
| Sent: | Thursday, May 13, 2010 2:27 PM |
| To: | Steve Knotts |
| Subject: | When I went to Linda H. |

Hi Steve,

When I went to Linda about the way I was being represented she was having a personal conversation on the phone with Trish and I had to wait. She and Linda are very loud in the Halls and I no longer have confidence that I can approach Linda. She said the set ups and back stabbing had to stop when I told her what happened and how upset I was as if I was irresponsible. I was accused of not having an inspection in a file by Katie and she never even looked in the file. It was there.

The Admin plan is still not corrected and we are asked how to correct it. For example the most simple thing as long as I have been here is that we do not take reports over the phone but the clients have to write to us has not been corrected...I told Trish and she just said ..oh hasn't that been changed yet....the staff meetings were held in the dark and got loud and it sounds like a party...I am too scared to say anything....I go the impression of Trish being against the front office just by attitude and all this loud going on in the Hall and people in her office ...she was not like that at first but she seems a different person and seems all powerful. My clients said things like how do you concentrate or well they are sure having fun! Again I do not feel files should be on the floor. What if the Doctor's office had files on the floor. All the information is confidential and vulnerable. I felt bad for Tammy when she told me Trish said to keep files in a cabinet is deceptive???? Are not file cabinets for security and confidentiality and organization????

*Gretchen Molnar*

*HCVP Certification Specialist 1*
*(440)354-3347 ext. 20*

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

**Steve Knotts**

| | |
|---|---|
| **From:** | Gretchen Molnar |
| **Sent:** | Thursday, May 13, 2010 1:41 PM |
| **To:** | Steve Knotts |
| **Subject:** | FW: My Check |

I was requested to give these to my supervisor. She said you were responsible for the whole thing with OPERS like I was responsible for what the clerk lost of mine and you will not cover it up or retaliate.
Amber answered my questions that were about with holding not OPERS.
See below..per your request

*Gretchen Molnar*

*HCVP  Certification Specialist 1*
*(440)354-3347 ext. 20*

This e-mail message, including any attachments. is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

**From:** Gretchen Molnar
**Sent:** Friday, April 23, 2010 8:53 AM
**To:** Patricia England
**Subject:** FW: My Check

Per your request

*Gretchen Molnar*

*HCVP  Certification Specialist 1*
*(440)354-3347 ext. 20*

This e-mail message, including any attachments. is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

**From:** Steve Knotts
**Sent:** Thursday, November 13, 2008 3:04 PM
**To:** Gretchen Molnar; Amber Martin
**Subject:** RE: My Check

Hi Gretchen,
Yes it is perfectly fine to check on the correctness of your payroll. I keep hoping for an extra zero in mine JK☺
Thanks,
Steve

**From:** Gretchen Molnar
**Sent:** Thursday, November 13, 2008 2:44 PM
**To:** Amber Martin
**Cc:** Steve Knotts
**Subject:** My Check

I am sorry to bother you but I do not understand my check. I do not see sick time and vacation time and I see 78.5 hours not 75...what is the 7.5 separated out?
And why 71.00?
I will compare this to my last regular check that I know was correct. Why is it that my net is $67.00 more? I want withholdings at the single rate 0 deductions the highest please as I filled out on the W4...I will double check this tonight hopefully. I know we are not supposed to go to your office to talk but I feel this is very important and I want to see you privately and am requesting permission when I have my last correct regular paycheck here with me. I hope this will be alright with Steve.
Thank you,
Gretchen

*Gretchen Molnar*

*Interviewer*
*(440)354-3347 ext. 20*

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

*(440)354-3347 ext. 20*

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

**From:** Patricia England
**Sent:** Wednesday, May 05, 2010 5:27 PM
**To:** Linda Mengelkamp; Melissa Martin
**Cc:** Gretchen Molnar
**Subject:** Re: Emily Nash

Gretchen never should have told her we "lost" the file. She has a bad habit of misplacing files in her office. Where was it?

Sent from my Verizon Wireless BlackBerry

**From:** "Linda Mengelkamp" <lmengelkamp@LakeMetroHousing.org>
**Date:** Wed, 5 May 2010 17:21:27 -0400
**To:** Patricia England<pengland@LakeMetroHousing.org>; Melissa
Martin<MMartin@LakeMetroHousing.org>
**Cc:** Gretchen Molnar<GMolnar@LakeMetroHousing.org>
**Subject:** Emily Nash

I just wanted to let you know that I authorized Gretchen to stay late this evening so that she could give Ms. Nash a call and let her know that we have found her file and that we will get to the bottom of the confusion with her inspections, port status, FSS, etc. Based on Gretchen's e-mail from a few minutes ago, it looks like tomorrow is going to be a great day.

☺
-Linda

## Linda Mengelkamp

Administrative Office Manager
Lake Metropolitan Housing Authority
lmengelkamp@lakemetrohousing.org
440-354-3347 x-29

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

2

19



# Lake Metropolitan Housing Authority

189 First Street • Painesville, Ohio 44077
440-354-3347 • 440-354-5008 fax

www.lakehousing.net



EQUAL HOUSING
OPPORTUNITY

May 11, 2010

To: Steven Knotts, Executive Director
From: Mike Cody, Operations Manager
Subject: Conduct from the Front Office

Dear Steve:

I would like to take this opportunity to make you aware of several concerns that I have regarding
unprofessional conduct in the front office. Over the past few months, a concerning pattern of behavior
has been witnessed with respect to what I would consider insubordination. In addition to insubordinate
behavior, I have a growing concern that a collaborative effort is working to undermine the position and
integrity of the Executive Director of LMHA.

My first concerns regarding staff insubordination occurred during a staff meeting when Patricia England
raised the topic of work place safety. A discussion was had regarding the protocol for dealing with an
irate client in the LMHA waiting area who was requesting a meeting with someone in the building. The
managers discussed several ways in which the situation could be handled. Following the meeting,
Patricia England had asserted to me that the Executive Director was placing customer service ahead of
employee safety. I did not agree with that position, and I felt that the issue was sprung on the E.D.
without any prior notification. It is my belief that the topic was an attempt to paint the E.D. in a poor
light. This was the first incident that I believe has led to a hostile office environment, with the HCV
Manager consistently displaying rude and insubordinate behavior toward the Executive Director.

At several managers' meetings, the HCV Manager has been insubordinate regarding conversations
concerning the legal representation for LMHA, the OPERS contributions issue, paid time off, and
complaints about having to have managers' meetings. I have been involved in discussions with the HCV
Manager where she has been openly holding the E.D. responsible for problems at LMHA that occurred in
other department.

The HCV Manager advised me not to get involved in an issue regarding a smoke damaged HCV rental
unit. The HCV Manager informed me that I should not contact the tenant of the unit and that I should
let the E.D. resolve the issue. She informed me that the E.D. was going to be responsible for the
resolution of the problem. I had serious concerns regarding the possible treatment the HCV client was
receiving from the HCV Department, so I felt compelled to assist the E.D. in resolving the matter. The

2/)

Case No.
1:11-CV-02589

PLAINTIFF 6g

HCV Manager had indicated that the HCV client was some how unstable and that she was trying to manipulate the situation to her advantage. My experience with the HCV client proved otherwise.

Additional concern regarding this incident was derived from the fact that the Administrative Office Assistant also failed to act in the best interest of the agency. She felt that the smoke damaged unit should be handled by the Executive Director, and that I should not be involved. The HCV Manager and the Administrative Assistant had previously advised the E.D. to hire an 'Action Maid' cleaning service to clean the unit. They then instructed an intern to contact a cleaning company to set up an appointment to clean the unit. The cleaning company was not informed that the unit had smoke damage, and when they arrived at the unit, they informed the tenant that they would be unable to complete the cleaning. At this point, the HCV Manager and the Administrative Assistant resolved to let the E.D. deal with the issue.

In late February, it was brought to my attention by Chris Butler that he had been contacted by the HCV Manager regarding a position opening in the HCV Department. She let Chris know that Shannon Hay was leaving and that Chris could have the job. She told Chris that she did not want to go through the interviewing process. She told Chris not to tell me that she was offering the inspectors position to him. Chris immediately spoke to me about the conversation because he felt it was not right that she asked him to not inform me of the job opening. Upon complaining to the Executive Director about this unprofessional behavior, I learned that the Administrative Office Assistant was in the HCV Manager's Office when the call to Chris Butler was made.

I have had several issues with regard to the Public Housing Manager and the Administrative Office Assistant. After some of the maintenance men asked about criminal activity occurring at Woodlawn Homes, the Public Housing Manager was not aware of police activity that had taken place on the property. Police had been on the property looking for a murder suspect. It had also been reported to maintenance, by the Woodlawn tenants, that the suspect was armed. The Public Housing Manager asked the maintenance staffer where the information on this incident had come from. When I raised the concern to the E.D. and the Administrative Office Assistant that the Public Housing Manager was not reviewing the police incident reports, a meeting was scheduled to go over the situation. I believe that the Public Housing Manager was warned about the meeting by the Administrative Office Assistant. The Public Housing Manager came to the meeting prepared with the police reports that she had, and was more knowledgeable about the criminal issues then she had been the day before. This was the second time that I felt the Administrative Office Assistant had stepped in to help cover for the Public Housing Manager.

In March, I informed the E.D. and the Administrative Assistant that the public meeting notices had not been posted prior to the board meeting. Meeting notices had always been printed by the Public Housing Manager and given the Operations Manager to be posted at the properties. Following my e-mail indicating the oversight, the Administrative Office Manager printed meeting notices to be posted at the properties. The notices were left in the Operations Manager's mailbox.

On May 10, 2010, I received an e-mail from the Public Housing Manager insinuating that the maintenance department was not performing make ready activities that met then same housekeeping standards that LMHA expects the residents to maintain. I was later informed by a public housing staffer that the e-mail response from the Public Housing Manager had been coached by the Administrative Office Assistant.

$\partial I$

On May 12, 2010, it was brought to my attention by the custodian at Jackson Towers that he had performed all of the re-inspections that were scheduled for the day. He informed me that the Public Housing Manager called him several times to reschedule the inspection times. She finally called him to let him know that she was to busy with other work to complete the re-inspections. At that time, the custodian volunteered to complete the inspections alone. The most recent procedure that was developed regarding unit inspections has clearly outlined the need for the public housing manager to complete the unit re-inspections.

Steve, I am very concerned with the subversive and undermining nature of the activities that have been conducted by the HCV Manager, the Public Housing Manager and the Administrative Office Assistant. I believe that these three managers have conducted themselves in a very unprofessional manner. I further believe that they are intentionally working to undermine the authority of the Executive Director. This subversive behavior is being conducted to the detriment of the Housing Authority.

Sincerely,

Mike Cody
Operations Manager

March 10, 2010

HR issue brought up by HCVP Manager, Patricia England to Executive Director, Steve Knotts
Discussion held in the presence of and with input from the Admin. Office Manager, Linda Mengelkamp

Notes compiled by Linda Mengelkamp

Mrs. England stated that she will no longer tolerate the aggressive behavior of the Executive Director
toward her as happened at the Managers Meeting on March 9th. At that meeting, Mrs. England brought
up an issue that is of concern to her and should be of concern to the entire management staff concerning
the safety of LMHA employees. The agency is in the process of upgrading security systems throughout
the public housing and administrative properties however, when a hostile/irate tenant, landlord, visitor
comes into the building it is not uncommon for them to be allowed back into the working areas in an
attempt to diffuse the situation. Mrs. England's concern is that there is no policy in place about no
allowing people in this state of agitation to gain access to the building. Her concerns were supported by
the other members of the management staff however she felt aggression from Mr. Knotts because she
brought this subject up. In fact, he was quick to cut off another manager who was trying to express
agreement with Mrs. England.

After the managers meeting, Mrs. England was approached by several of the other members of the
management team who expressed concern over the aggression that Mr. Knotts showed toward her. She
stated that she feels that he is targeting her and that this is because she is a strong, intelligent female and
that he is attempting to undermine her authority as a Manager.

Mr. Knotts stated that he did not feel that he reacted aggressively and Mrs. England pointed out that his
facial expressions, coloring and agitated body language clearly showed otherwise. Additionally, she
stated that he did not allow the discussion to continue in a healthy manner but rather stifled it and
"pushed it under the rug".

Mrs. Mengelkamp was asked if she agreed with Mrs. England's assessment of the reaction in the meeting
and after confirming that she was free to speak freely, she agreed with Mrs. England that the reaction
was one of offense and not what would have been expected in the forum of a Manager's Meeting where
the members of the management team should be free to bring up issues and concerns without fear of
retaliation. She further stated that the ED's aggressive reactions toward issue are making some of the
staff feel uneasy and if this behavior toward her does not stop she will be forced to contact the EEOC.

At this meeting, the ED apologized and stated that he admits that he gets overly passionate about issues
and that he may have reacted poorly and was unaware that anyone took offense at his actions. All three
parties are to meet again in a month's time to review this issue and determine if progress is being made.

23

**Case No.
1:11-CV-02589**

**PLAINTIFF 7**

Appendix PG. 22



# LAKE METROPOLITAN HOUSING AUTHORITY

An Equal Opportunity Employer

Page 1 of 4

## POSITION DESCRIPTION

| Name of Incumbent: | | Position Title: | Administrative Office Manager |
|---|---|---|---|

| Office/Division: | Administration | Employment Status: | Full-Time |
|---|---|---|---|
| Reports To: | Executive Director | FLSA Status: | Exempt |
| Position Grade: | | | |
| Supervises/Supervision of: | | Applications Clerk/Receptionist | |

## JOB RESPONSIBILITIES
In addition to the following, performs other related duties as required.

Assists the Executive Director with the overall management of the Authority; coordinates and oversees human resource functions; assists with special program development and strategic planning; prepares grant applications for various Authority program efforts, serves as the Public Records Officer; assumes the responsibility for the operation of the agency during absences of the Executive Director; conducts research and prepares a variety of reports and communications.

## QUALIFICATIONS
Any combination of training and work experience which indicates possession of the knowledge, skills, and abilities listed below. An example of an acceptable qualification for this position:

Completion of a Bachelor's degree in business administration, public administration, human resource management, or other related discipline, plus three to five years prior experience in managing/supervising others, or equivalent.

## LICENSURE OR CERTIFICATION REQUIREMENTS

Must possess a valid State of Ohio driver's license and remain insurable in accordance with the agency's vehicle insurance policy; must be bondable.

## ESSENTIAL FUNCTIONS OF THE POSITION
For purposes of 42 USC 12101:

1.  Assists the Executive Director with the performance of administrative responsibilities and public relations activities; prepares for and facilitates meetings; assists with the planning, and conduct of special projects, and the preparation and submission of the agency plan; coordinates information between departments and the Director; assumes responsibility for the operation of the agency during absences of the Director; researches and prepares reports, news articles, budgets, speeches, and other written documents and communications.

{10/2/2008  PDLKEHA 00059736.DOC}

Case No.
1:11-CV-02589
PLAINTIFF 9

Appendix PG. 23

# LAKE METROPOLITAN HOUSING AUTHORITY

An Equal Opportunity Employer

Page 2 of 4

## POSITION DESCRIPTION

| Name of Incumbent: | | Position Title: | Administrative Office Manager |
|---|---|---|---|

2.  Serves as liaison between the agency and other public and private agencies or organizations; represents the agency at meetings and other events (during or after normal business hours) as appropriate and/or as assigned by the Director; serves as liaison between the agency and the Bureau of Workers' Compensation.

3.  Prepares minutes from Board meetings, committee meetings, public hearings, and other agency meetings; prepares resolutions, agreements, and other actions of the Board; gathers and compiles data; prepares Board packets; maintains records.

4.  Serves as agency Human Resource Coordinator by performing various functions such as posting, advertising, and filling job vacancies, conducting background checks; planning and conducting new employee orientation to foster positive attitudes toward agency goals, maintaining employee personnel files, coordinating the development of position descriptions; assisting with the development, administration, and updating of personnel policies and safety policies; reviewing employee benefits, maintaining records of benefit plan participation, maintaining employee statistics, tracking leave usage, conducting exit interviews, and serving as agency EEO Coordinator. Assists, guides, and trains management staff on matters regarding employee relations issues (e.g., interviewing, hiring, promotions, terminations, safety, corrective action/discipline, etc.); assists with the preparation of corrective action documents. Arranges staff meetings; receives, relays, or conveys information, requests, and directives to department heads and employees as appropriate. Prepares human resources related and benefit related memorandums for distribution. May serve as hearing administrator for predisciplinary actions.

5.  Manages the efficient operation of the office (e.g., schedules training; provides monthly event calendars to staff; maintains calendar for Executive Director; schedules travel; maintains and orders office supplies and equipment; etc.).

6.  Supervises the Applications Clerk/Receptionist (e.g., schedules and assigns tasks, administers or recommends discipline or commendation, evaluates employee performance, approves or denies leave requests, etc.).

7.  Assists with Request for Proposal (RFP) process including preparing RFP document, obtaining and reviewing bids, preparing contract awards, etc.; maintains records of all agency insurance policies (e.g., general liability, auto, medical benefits, etc.); maintains records of vendor contracts; reviews for compliance.

{10/2/2008 PDLKEHA 00059736.DOC}

# LAKE METROPOLITAN HOUSING AUTHORITY

An Equal Opportunity Employer

Page 3 of 4

## POSITION DESCRIPTION

| Name of Incumbent: | Position Title: | Administrative Office Manager |
|---|---|---|

8.  Prepares grants or assists in the preparation of grant applications.

9.  Receives and responds to internal and external inquiries regarding agency policies and procedures; assists managers in responding to inquiries and complaints.

10. Demonstrates regular and predictable attendance.

11. Meets all job safety requirements and all applicable OSHA safety standards that pertain to essential functions.

**OTHER DUTIES AND RESPONSIBILITIES:**

1.  Assists Executive Director with investigations.

2.  Coordinates agency events.

3.  Performs other related duties as assigned or directed in order to promote, further, and ensure the effective and efficient operation of the Lake Metropolitan Housing Authority.

**MINIMUM ACCEPTABLE CHARACTERISTICS:** (*indicates developed after employment)

**Knowledge of:** purchasing; government grant programs; agency goals and objectives; agency policies and procedures;* public relations; human resources management; employee benefits administration; supervisory principles and practices; office management; English grammar and spelling; records management; HUD rules and regulations governing HCV and public housing programs;* health and safety rules and regulations.

**Skill in:** computer operation; use of modern office equipment.

**Ability to:** deal with problems involving several variables within familiar context; define problems, collect data, establish facts, and draw valid conclusions; exercise independent judgment and discretion; understand, interpret, and apply laws, rules, or regulations to specific situations; determine material and equipment needs; calculate fractions, decimals, and percentages; prepare accurate documentation; prepare charts and graphs; write instructions and specifications; communicate effectively; handle sensitive inquiries from and contacts with officials and the general public; compile and prepare reports; understand a variety of written and/or verbal communications; gather, collate, and classify information; train or instruct others; develop and maintain effective working relationships; resolve complaints; travel to and gain access to work site.

{10/2/2008 PDLKEHA 00059736.DOC}

# LAKE METROPOLITAN HOUSING AUTHORITY

An Equal Opportunity Employer

Page 4 of 4

## POSITION DESCRIPTION

| Name of Incumbent: | Position Title: | Administrative Office Manager |
|---|---|---|

## EQUIPMENT OPERATED
**The following are examples only and are not intended to be all inclusive.**

Automobiles, computer and other standard business office equipment.

## INHERENTLY HAZARDOUS OR PHYSICALLY DEMANDING WORKING CONDITIONS

The employee: works with and around chemicals found in an office environment (toner, correction fluid, etc.); may be exposed to irate or emotionally distraught individuals.

Note:   In accordance with the U.S. Department of Labor physical demands strength ratings, this is considered sedentary work.

This position description in no manner states or implies that these are the only duties and responsibilities to be performed by the position incumbent. My signature below signifies that I have reviewed and understand the contents of my position description.

Approval of Executive Director

Date

Employee Signature

Date    Sept. 1, 2009

{10/2/2008  PDLKEHA 00059736.DOC}



**Lake Metropolitan Housing Authority**
189 First Street · Painesville, Ohio 44077
440-354-3347 · 440-354-5008 fax



EQUAL HOUSING
OPPORTUNITY

### PERSONNEL CHANGE FORM

☐ New Hire   ☐ Termination   ☐ Status Change   ☐ Discipline   ☒ Pay Increase

| Today's Date: 3/8/2010 | Effective Date: 3/8/10 | Date of Hire: 9/8/10 |

**Reason for Change:**   ☐ Promotion   ☐ Bonus   ☐ Annual Increase
☐ Leave of Absence   ☐ Layoff   ☐ Resignation   ☐ Discharged
☐ Return from Leave   ☐ Transfer   ☐ Rehired   ☐ Differential/End date: _____

6-month Review

| Previous OPERS Plan? | Y/N | Offer Letter? | Y/N |
| Background Check Initiated? | Y/N | New Hire Packet Given to Employee? | Y/N |
| Employment Application Complete? | Y/N | State Withholding (if applicable) | Y/N |
| Employee Personal Data Sheet? | Y/N | W-4 Withholding | |

| Name: Linda Mengelkamp | Telephone Number: |
| Address: | Date of Birth: |
| | Social Security Number: |
| | Emergency Contact Number: |

☐ Current Title: Administrative Office Manager   New Title: SAME

☐ Transfer:   Old Department: _____   New Department: _____

**Current Pay Type:**   ☐ Hourly   ☐ Salary   **Category:** ☐ Part – Time   ☐ Full – Time

☒ Pay Change:   Current Rate: _____   New Rate: _____   New Annual: $46,000 KV

**Schedule:**   ☐ M-F 8:30 p.m. – 5:00 p.m.   ☐ Other: _____

Comments: _____

**Case No.
1:11-CV-02589
PLAINTIFF 11**

**OFFICE USE ONLY**
☐ Verbal Offer   ☐ Written Offer   ☐ Accepted   ☐ Rejected
☐ Background   ☐ IT Notified   ☐ Finance Notified   ☐ Payroll Notified
☐ Benefits Notified   ☐ File complete   ☐

Executive Director Signature   Date 3.8.10

Human Resources Signature   Date 3/8/10

## LAKE METROPOLITAN HOUSING AUTHORITY
### An Equal Opportunity Employer
## PERFORMANCE EVALUATION

Page 1 of 7

**Employee Name** _____ **Linda Mengelkamp** _____

**Position Title** _____ **Administrative Office Manager** _____

**Date** _____ **3-8-2010** _____

**Ratings:**
- 4 — Consistently Exceeds Performance Standards
- 3 — Often Exceeds Performance Standards
- 2 — Consistently Meets Performance Standards
- 1 — Often Below Performance Standards
- 0 — Consistently Below Performance Standards

## PART 1

1. Assists the Executive Director with the performance of administrative responsibilities and public relations activities; prepares for and facilitates meetings; assists with the planning and conduct of special projects, and the preparation and submission of the agency plan; coordinates information between departments and the Director; assumes responsibility for the operation of the agency during absences of the Director; researches and prepares reports, news articles, budgets, speeches, and other written documents and communications.

**Rating/Points**

| | | | | | **Supporting Examples** _____ |
|---|---|---|---|---|---|
| (4) | 3 | 2 | 1 | 0 | See Attached |
| 15 | 11 | 8 | 4 | 0 | |

2. Serves as liaison between the agency and other public and private agencies or organizations; represents the agency at meetings and other events (during or after normal business hours) as appropriate and/or as assigned by the Director; develops and implements programs of information, education, and outreach; participates in meetings serves as liaison between the agency and the Bureau of Workers' Compensation.

Developed By:
Clemans, Nelson & Associates, Inc.                    {5/22/2009 PELKEHA 00066903.DOC

**LAKE METROPOLITAN HOUSING AUTHORITY**
An Equal Opportunity Employer
**PERFORMANCE EVALUATION**                    Page 2 of 7

**Rating/Points**                    **Supporting Examples**
                                      See Attached
(4)   3    2    1    0

12    9    6    3    0

3.   Serves as agency Human Resource Coordinator by performing various functions such as posting, advertising, and filling job vacancies, conducting background checks; planning and conducting new employee orientation to foster positive attitudes toward agency goals, maintaining employee personnel files, coordinating the development of position descriptions; assisting with the development, administration, and updating of personnel policies and safety policies; reviewing employee benefits, maintaining records of benefit plan participation, maintaining employee statistics, tracking leave usage, conducting exit interviews, and serving as agency EEO Coordinator. Assists, guides, and trains management staff on matters regarding employee relations issues (e.g., interviewing, hiring, promotions, terminations, safety, corrective action/discipline, etc.); assists with the preparation of corrective action documents. Arranges staff meetings; receives, relays, or conveys information, requests, and directives to department heads and employees as appropriate. Prepares human resources related and benefit related memorandums for distribution. May serve as hearing administrator for predisciplinary actions.

Receives and responds to internal and external inquiries regarding agency policies and procedures; assists managers in responding to inquiries and complaints.

**Rating/Points**                    **Supporting Examples**
                                      See Attached
(4)   3    2    1    0

12    9    6    3    0

4.   Prepares minutes from Board meetings, committee meetings, public hearings, and other agency meetings; prepares resolutions, agreements, and other actions of the Board; gathers and compiles data; prepares Board packets; maintains records; completes tasks timely, accurately and in accordance with established procedures

**LAKE METROPOLITAN HOUSING AUTHORITY**
An Equal Opportunity Employer
**PERFORMANCE EVALUATION**

**Rating/Points**

( 4 )   3   2   1   0

_____

8   6   4   2   0

**Supporting Examples** _____
See Attached
_____
_____
_____
_____
_____

5.  Manages the efficient operation of the office (e.g., schedules training; provides monthly event calendars to staff; maintains calendar for Executive Director; schedules travel; maintains and orders office supplies and equipment; etc.). Supervises the Applications Clerk/Receptionist (e.g., schedules and assigns tasks, administers or recommends discipline or commendation, evaluates employee performance, approves or denies leave requests, etc.).

Establishes and maintains effective working relationships with supervisors, co-workers, clients, and the public; serves as a responsible and knowledgeable representative of the agency as related to the scope of job responsibilities; attends meetings and/or conferences to participate in an effective exchange of information; handles contacts, inquiries, and complaints courteously and professionally; communicates effectively in oral and written form consistent with job responsibilities. Maintains confidentiality of information as appropriate.

**Rating/Points**

( 4 )   3   2   1   0

_____

8   6   4   2   0

**Supporting Examples** _____
See Attached
_____
_____
_____
_____
_____

6.  Assists with Request for Proposal (RFP) process including preparing RFP document, obtaining and reviewing bids, preparing contract awards, etc.; maintains records of all agency insurance policies (e.g., general liability, auto, medical benefits, etc.); maintains records of vendor contracts; reviews for compliance.

## LAKE METROPOLITAN HOUSING AUTHORITY
### An Equal Opportunity Employer
## PERFORMANCE EVALUATION

**Rating/Points**

(4)   3   2   1   0

**Supporting Examples**
See Attached

_____

5   4   3   1   0

7.   Prepares grants or assists in the preparation of grant applicants.

**Rating/Points**

(4)   3   2   1   0

**Supporting Examples**
See Attached

5   4   3   1   0

8.   Demonstrates regular and predictable attendance.

**Rating/Points**

(4)   3   2   1   0

**Supporting Examples**
See Attached

5   4   3   1   0

## PART 2

1.   <u>Adherence to Policies and Procedures</u>

Performs tasks according to applicable policy/procedural guidelines; brings questions of policy interpretation to supervisor's attention for clarification and resolution; understands policies and, as required, explains policies adequately to other staff/general public.

## LAKE METROPOLITAN HOUSING AUTHORITY
### An Equal Opportunity Employer
## PERFORMANCE EVALUATION

**Rating/Points**        **Supporting Examples** _____

(4)   3   2   1   0

5   4   3   1   0

2.   Initiative

Completes regular assignments without close checking and instruction from supervisor; completes one task and begins another within job functions without the need of constant assignment or direction from supervisor; performs assigned tasks or projects within established time frames; plans and arranges work schedule to meet assignment priorities and commitments; reports need for further work to manager; voluntarily assists others when assigned tasks are completed.

**Rating/Points**        **Supporting Examples** _____

(4)   3   2   1   0

5   4   3   1   0

3.   Interpersonal Relations and Communications

Establishes and maintains effective working relationships with supervisors, co-workers, clients, and the public; serves as a responsible and knowledgeable representative of the agency as related to the scope of job responsibilities; attends meetings and/or conferences to participate in an effective exchange of information; handles contacts, inquiries, and complaints courteously and professionally; communicates effectively in oral and written form consistent with job responsibilities. Maintains confidentiality of information as appropriate.

**Rating/Points**        **Supporting Examples** _____

(4)   3   2   1   0

5   4   3   1   0

Developed By:
Clemans, Nelson & Associates, Inc.    (5/22/2009 PELKEHA 00066903.DOC

**Appendix PG. 32**

## LAKE METROPOLITAN HOUSING AUTHORITY
### An Equal Opportunity Employer
## PERFORMANCE EVALUATION

4.    Quantity of Work

Completes tasks or projects in allotted time; does not engage in needless delays of work; takes appropriate action to overcome obstacles and timely complete tasks/projects; assists with completion of other tasks when regularly assigned tasks are completed early.

**Rating/Points**          **Supporting Examples** _____

(4)    3    2    1    0    _____
                          _____
_____          _____
5    4    3    1    0    _____

5.    Quality of Work

Makes few errors and usually catches and corrects those made; ensures final product has a professional appearance; ensures work completed complies with applicable regulations, policies or established procedures.

**Rating/Points**          **Supporting Examples** _____

(4)    3    2    1    0    _____
                          _____
_____          _____
5    4    3    1    0    _____

6.    Appearance

Employee's appearance is appropriate for his or her position in the agency; employee adheres to written dress code; employee demonstrates good personal hygiene and grooming habits; clothing is neat, clean, and properly maintained.

# LAKE METROPOLITAN HOUSING AUTHORITY
### An Equal Opportunity Employer
## PERFORMANCE EVALUATION

Page 7 of 7

**Rating/Points**          **Supporting Examples** _____

( 4 )   3   2   1   0      _____
                          _____
                          _____
_____     _____
5   4   3   1   0          _____
                          _____

**Performance Evaluation Score**    =    /00 _____

**Performance Evaluation Key**

100        The Employee's Performance Consistently Exceeds Standards or Expectations

77 – 99    The Employee's Performance Often Exceeds Standards or Expectations

55 – 76    The Employee's Performance Consistently Meets Standards or Expectations

23 – 54    The Employee's Performance is Often Below Standards or Expectations

0 – 22 The Employee's Performance is consistently Below Standards or Expectations

_____        ___3/8/10___
Employee Signature                       Date

_____        _____
Supervisor Signature                     Date

_____        ___3/6/10___
Executive Director Signature             Date

Developed By:
Clemans, Nelson & Associates, Inc.        (5/22/2009  PELKEHA 00066903.DOC

**Appendix PG. 34**

Performance Review:    Linda Mengelkamp
Date:                           March 8, 2010
Position:                     Administrative Office Manager

Performance Items:

I first want to make very clear that working with Linda is a pleasure and it feels as if we have worked together for many years, even though I had never known her before her interviewing for her current position. She has been able to handle coming into an Agency which was still in turmoil and quickly become very effective.

She has a unique ability to produce a tremendous amount of quality work within a short time period. She is also one of the most organized professionals that I have worked with. She has taken on a number of challenges outside her current area / responsibility and produced results in many cases better than long term managers / employees within these areas. She has increased compliance and customer service in a number of areas detailed below. I also feel she has saved the Agency considerable money on a number of the initiatives undertaken. Linda has a positive outlook and truly embodies the competencies of her (all of manager's) job descriptions and the mission of the Agency.  When needed, Linda has worked many additional hours. Linda is truly an asset to LMHA.

Part I:

1)

- Linda was able to accomplish the goal of reducing the time it took LMHA to process HAP checks. This has been an ongoing issue for over 2 years and she reduced the processing time from 2+ days to 2 hours the second time she was overseeing the department. This had been a goal assigned to the previous 2 finance Managers who were unable to accomplish in a combined 2.5 years. This reduces the amount of office labor and also increases the level of accuracy and customer service to our clients. I cannot state how important this item is to the Agency and how long it was a broken system.
- Managed the finance office during the staffing changes, working with Finance Assistant to ensure that payables were being processed in a timely and accurate manner, guiding the temp on duties to be fulfilled to maintain productivity in the finance office.
- Prepared the 2010 Annual Plan with very little guidance and decided to have it completed one month prior to the deadline. Again, exceeding expectations.
- Initiated the revision of the process of handling monies from the laundry, vending, and change machines at the Public Housing facilities ensuring that all funds are being accounted for and are accurately recorded and deposited; this produced a significant increase in these dollar amounts. Again another item where the previous finance managers were unable to resolve this very important issue which I believe will save the agency literally thousands of dollars a year.

1

2)

- Linda has offered on many occasions to attend events to represent LMHA in off hours and has also attended events during normal business hours.
- Facilitated necessary immediate changes to the PPM that included preparing board resolutions, editing the appropriate sections of the PPM, distributing updated copies to all employees
- Maintains communication with IT provider regarding internal computer systems, hardware, software, website maintenance & updates, security, and future needs/expectations
- Prepares all board packets and correspondence; is responsible for board meeting set-up and clean-up; records and transcribes all board meeting minutes; responsible for proper disposition/recycling of old board materials and correspondence
- Linda has kept up to date with the BWC on a long standing claim.
- Linda has been instrumental in raising the level of professionalism with the Agency for both internal and external clients.

3)

- Participated in Section 3 training and is responsible for agency Section 3 compliance reporting
- Conducted interviews to fill 5 open positions within the agency including job posting, resume review, interviewing, preparation of new-hire paperwork, new employee orientation; this included 20 interviews for the position of finance manager and 11 interviews for the position of part-time HQS inspector.
- Manages travel arrangements for staff and board members as well as training and seminar enrollment/registration and payment.

4)

- Serves as hearing officer for both Public Housing and HCVP and maintains a fair and impartial position to ensure that the clients and the agency always get a fair chance to be heard and that hearing decisions are rendered and distributed in accordance with agency policy and CFR
- Assisted in location and preparation of documents for both the Annual FY audit as well as the ongoing OIG Audit; this included researching and locating missing documents, re-compiling missing or incomplete information, locating receipts and back up for $17,000 in missing travel expense documentation.

5)

- Took over the payroll processing within 2 weeks of hire and has been able to streamline the process to eliminate errors in processing, reporting, and payment; works with Paychex to make sure that LMHA is in compliance with all federal, state, local and agency policies regarding payroll processing, deductions, reporting, and record keeping
- Edited the Public Housing handbook and handled the printing of 250 copies of the handbook.

- Edits and contracts the printing of Public Housing, HCVP and Administration forms
- Handles the ordering and distribution of employee badges, business cards, and keys
- Maintains office supply levels, orders as needed, and keeps supply locations organized
- Needs minimal supervision/guidance in completing tasks; is quick to research processes to complete tasks, reporting, etc. in a timely and efficient manner
- Is professional in appearance and actions, maintains an upbeat and positive attitude even during stressful situations; does not let personal issues or emotions get in the way of performance
- Regularly arrives early and stays late and produces results on time and, in many cases, ahead of scheduled due dates.
- Provides excellent customer service to internal and external clients
- Set up direct deposit for all remaining employee accounts thus eliminating errors previously present in the payroll process

6)
- Linda has been instrumental in organizing all of the files in her office and also all of the RFP / contract files. She has also assisted in the bidding of a number of contracts.
- Linda has attended procurement training and has already become the office "expert" on all things contract or RFP. Again showing a unique ability to comprehend and implement items for the betterment of the Agency.
- Researched and facilitated the contract for a new high-speed copier including installation, workstation configuration, and staff training.
- Organized and maintains contract files, RFP documents, Legal files, Resolutions, board meeting minutes in an accurate and professional method

7)
- Linda has shown her ability to follow HUD guidelines in responses to various items including the Annual plan and also response to HUD from various audit closings etc.  She has been willing to take classes on grant writing however due to scheduling conflict was unable however I feel strongly if time was provided she would be able to produce compelling grant applications. This being said at this point I feel we have too many compliance issues to allocate any of her resources to this Grant writing and have discussed the possibility of an additional staff member to take this area over.

8)
- Attendance has been good.

3

Appendix PG. 37

Goals (both short-term and long term):

- Complete review and update PPM with suggestions / options such as LMHA providing "match" to 457 (deferred comp) for staff, additional options for comp time for managers, moving to a PTO vs. sick and vacation, possible bonus for staff members etc. etc.
- Complete evaluation of all contract files to verify compliance with HUD Procurement regulations
- Once review of current contracts is completed begin process of rebidding all contracts (with assistance from division managers) which are out of compliance.
- Ensure all new hires receive appropriate training as well as any annual updating of suggested training.
- Update of LMHA Website
- Creation and production of LMHA newsletter
- Review current contracts for IT provider and telephone system and re-bid ensure that the agency's needs are being met
- As time permits additional training to increase knowledge of PHA policies, procedures, and guidelines as well as operational program training.

Linda Mengelkamp          Date          Executive Director          Date

4

**Appendix PG. 38**

Page 1 of 2



# Lake Metropolitan Housing Authority
189 First Street ⬧ Painesville, Ohio 44077
440-354-3347 ⬧ 440-354-5008 fax



EQUAL HOUSING
OPPORTUNITY

SUMMARRY OF INVESTIGATION AND REMEDIAL ACTION TAKEN RELATIVE TO AN ALLEGATION OF
SEXUAL HARASSMENT FILED ON APRIL 29, 2010

On April 29, 2010, Erica Peavy, Public Housing Manager, (employee or Mrs. Peavy) contacted me as the
Administrative Office Manager with responsibility for Human Resources matters to advise of alleged
sexual harassment that occurred on that day involving the employee and an outside vendor.   The
accused vendor was still on site upon my becoming aware of the incident, I advised the Executive
Director of the incident and concerns, and the vendor was escorted off site.  The subject of the
complaint is Scott Gleason, MCS/PHA-Web Vendor, who has worked with the agency since 1999.

The employee was requested to put her complaint in writing and she did so. I, then interviewed several
staff members and obtained written statements regarding the allegations of sexual harassment.

The allegations have been investigated and although there are conflicting perceptions with regard to the
comfort level of some employees to have this vendor on-site for training, it is my opinion that Mrs.
Peavy's claims of inappropriate conduct/harassment have been substantiated enough to warrant
remedial action on the part of LMHA.

The following remedial action has been reviewed with the Executive Director and has already been
implemented or will be implemented promptly:

1. Mr. Gleason has been advised that he is not allowed on LMHA property for any reason.
   MCS/PHA-Web will provide LMHA with an alternate support/training contact for future service
   needs.

2. All staff hired since Clemans-Nelson was last on site for the presentation of "Discriminatory
   Harassment Training" will be required to view that training video.  All other staff members will
   be provided the opportunity to re-review this training material as well.  Employees will sign an
   acknowledgment form to establish that they have viewed/reviewed the training materials.  If
   determined necessary, Clemans-Nelson will be contacted and scheduled to provide on-site
   training on this topic again.

3. All reports of inappropriate behavior involving a vendor, whether verbal or written, will be
   documented and investigated and marked as "substantiated", "unsubstantiated", or
   "unsubstantiated due to insufficient and/or conflicting information".  Such reports will be
   maintained in a permanent vendor file (i.e. the contract file), and such reports will be
   considered prior to allowing any vendor on LMHA property. This component will be reviewed
   with all managers at the next management meeting.

Case No.
1:11-CV-02589

PLAINTIFF 14

Appendix PG. 39

4.  I will meet personally with Mrs. Peavy to review the outcome of the investigation and the remedial action taken.

5.  Consistent with LMHA Policy, there is no tolerance for retaliating and/or targeting of the complainant involved in this investigation.


Approved: _____

_____
Linda Mengelkamp                          Steve Knotts
Administrative Office Manager              Executive Director

Lake Metropolitan Housing Authority
May 11, 2010

-----Original Message-----
From: Linda Mengelkamp
Sent: Wednesday, May 12, 2010 4:17 PM
To: Steve Knotts
Subject: For Attorney Richard Hennig
Sensitivity: Confidential

Steve,
Attached is a scan of the documents Richard requested. These have already
been reviewed by Clemens-Nelson and I have discussed this situation with our
representative, Sandy Conely. She stated that if Richard has any questions
regarding this matter, he should contact her at 330-785-7700.

I am sure that I do not need to remind either of you that this incident is
one that must remain confidential and as such, this attached document must
not be shared with anyone other than LMHA Legal Counsel and shall be covered
under binding confidentiality guidelines between all parties.

If Richard would like additional information from me, please let me know.


Linda Mengelkamp
Administrative Office Manager
Lake Metropolitan Housing Authority
lmengelkamp@lakemetrohousing.org
440-354-3347 x-29


This e-mail message, including any attachments, is for the sole use of the
intended recipient(s) and may contain private, confidential, and/or
privileged information. Any unauthorized review, use, disclosure, or
distribution is prohibited. If you are not the intended recipient, employee,
or agent responsible for delivering this message, please contact the sender
by reply e-mail and destroy all copies of the original e-mail message.


-----Original Message-----
From: Scanner@lakemetrohousing.org [mailto:Scanner@lakemetrohousing.org]
Sent: Wednesday, May 12, 2010 4:11 PM
To: Linda Mengelkamp
Subject: Scanned from a Xerox multifunction device


Please open the attached document. It was scanned and sent to you using a
Xerox multifunction device.

**Appendix PG. 41**


*2nd revision*

SUMMARRY OF INVESTIGATION AND REMEDIAL ACTION TAKEN RELATIVE TO AN ALLEGATION OF SEXUAL HARASSMENT FILED ON APRIL 29, 2010

On April 29, 2010, Erica Peavy, Public Housing Manager, (employee or Mrs. Peavy) contacted me as the Administrative Office Manager with responsibility for Human Resources matters to advise of alleged sexual harassment that occurred on that day involving the employee and an outside vendor. The accused vendor was still on site upon my becoming aware of the incident, I advised the Executive Director of the incident and concerns, and the vendor was escorted off site. The subject of the complaint is Scott Gleason, MCS/PHA-Web Vendor, who has worked with the agency since _____.

The employee was requested to put her complaint in writing and she did so. I, then interviewed several staff members and obtained written statements regarding the allegations of sexual harassment.

The allegations have been investigated and although there are conflicting perceptions with regard to the comfort level of some employees to have this vendor on-site for training, it is my opinion that Mrs. Peavy's claims of inappropriate conduct/harassment have been substantiated enough to warrant remedial action on the part of LMHA.

The following remedial action has been reviewed with the Executive Director and has already been implemented or will be implemented promptly:

1. Mr. Gleason has been advised that he is not allowed on LMHA property for any reason. MCS/PHA-Web will provide LMHA with an alternate support/training contact for future service needs.

2. All staff hired since Clemans-Nelson was last on site for the presentation of "Discriminatory Harassment Training" will be required to view that training video. All other staff members will be provided the opportunity to re-review this training material as well. Employees will sign an acknowledgment form to establish that they have viewed/reviewed the training materials. If determined necessary, Clemans-Nelson will be contacted and scheduled to provide on-site training on this topic again.

3. All reports of inappropriate behavior involving a vendor, whether verbal or written, will be documented and investigated and marked as "substantiated", "unsubstantiated", or "unsubstantiated due to insufficient and/or conflicting information". Such reports will be maintained in a permanent vendor file (i.e. the contract file), and such reports will be considered prior to allowing any vendor on LMHA property. This component will be reviewed with all managers at the next management meeting.

4. I will meet personally with Mrs. Peavy to review the outcome of the investigation and the remedial action taken.

5. *Consistent with LMHA policy there will be*

_____
Linda Mengelkamp
Administrative Office Manager
Lake Metropolitan Housing Authority
May 11, 2010

*no retaliation or targeting of complaintant as a result of this matter.*

Approved: _____
Steve Knotts
Executive Director

Case No.
1:11-CV-02589
PLAINTIFF 14a

*ac vl LM 5/11 will be*



SUMMARRY OF INVESTIGATION AND REMEDIAL ACTION TAKEN RELATIVE TO AN ALLEGATION OF SEXUAL HARASSMENT FILED ON APRIL 29, 2010

On April 29, 2010, Erica Peavy, Public Housing Manager, (employee or Mrs. Peavy) contacted me as the Administrative Office Manager with responsibility for Human Resources matters to advise of alleged sexual harassment that occurred on that day involving the employee and an outside vendor. The accused vendor was still on site upon my becoming aware of the incident, I advised the Executive Director of the incident and concerns, and the vendor was escorted off site. The subject of the complaint is Scott Gleason, MCS/PHA-Web Vendor, who has worked with the agency since _____.

The employee was requested to put her complaint in writing and she did so. I, then interviewed several staff members and obtained written statements regarding the allegations of sexual harassment.

The allegations have been investigated and although there are conflicting perceptions with regard to the comfort level of some employees to have this vendor on-site for training, it is my opinion that Mrs. Peavy's claims *of* inappropriate conduct/harassment has been substantiated enough to warrant remedial action on the part of LMHA. *ve*

The following remedial action has been reviewed with the Executive Director and has already been implemented or will be implemented promptly:

1. Mr. Gleason has been advised that he is not allowed on LMHA property for any reason. MCS/PHA-Web will provide LMHA with an alternate support/training contact for future service needs.

2. All staff hired since Clemans-Nelson was last on site for the presentation of "Discriminatory Harassment Training" will be required to view that training video. All other staff members will be provided the opportunity to re-review this training material as well. Employees will sign an acknowledgment form to establish that they have viewed/reviewed the training materials. If determined necessary, Clemans-Nelson will be contacted and scheduled to provide on-site training on this topic again.

3. All reports of inappropriate behavior involving a vendor, whether verbal or written, will be documented and investigated and marked as "substantiated", "unsubstantiated", or "unsubstantiated due to insufficient and/or conflicting information". Such reports will be maintained in a permanent vendor file (i.e. the contract file), and such reports will be considered prior to allowing any vendor on LMHA property. This component will be reviewed with all managers at the next management meeting.

4. I will meet personally with Mrs. Peavy to review the outcome of the investigation and the remedial action taken.

_____          Approved: _____

Linda Mengelkamp                                        Steve Knotts
Administrative Office Manager                        Executive Director
Lake Metropolitan Housing Authority
May 11, 2010

**Conley, Sandy**

| | |
|---|---|
| **From:** | Conley, Sandy |
| **Sent:** | Tuesday, May 11, 2010 3:20 PM |
| **To:** | 'Linda Mengelkamp' |
| **Subject:** | Emailing: LMHA_discrharr_051110_rv1 (00077024).DOC |
| **Attachments:** | LMHA_discrharr_051110_rv1 (00077024).DOC |

Linda:

Attached is a recommended revision that I suggest you review with Steve and then both sign off on. I will give you a call in a few minutes.

5/11/2010

**Appendix PG. 44**

Conley, Sandy

---

**From:** Linda Mengelkamp (lmengelkamp@LakeMetroHousing.org)
**Sent:** Friday, May 07, 2010 5:20 PM
**To:** Conley, Sandy
**Subject:** Harassment Incident

Sandy,

Just a few more questions on the issue we discussed earlier this week. I have discussed with the individual what she wants as closure to this issue and she said at the very least, she would like to see a written reprimand in the ED's file holding him accountable for allowing/authorizing the person to return to LMHA after several employees expressed concern and discomfort at his presence last year.

My question to you is how to facilitate such a thing. As the ED, he reports to the Board of Commissioners. As the Admin. Office Manager, I am not supposed to communicate directly with the board without going thru the ED first. However, as the HR representative on staff, I am required to do the right thing. I am stuck between a rock and a hard place on this one and am seeking guidance from you on how to proceed.

I will touch base with you next week (Monday if you are available).

Have a good weekend.
Sincerely,
Linda

# Linda Mengelkamp
Administrative Office Manager
Lake Metropolitan Housing Authority
lmengelkamp@lakemetrohousing.org
440-354-3347 x-29

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

## Conley, Sandy

**From:** Linda Mengelkamp [lmengelkamp@LakeMetroHousing.org]
**Sent:** Monday, May 03, 2010 4:47 PM
**To:** Conley, Sandy
**Subject:** Sexual Harassment Claim

Sandy,

I need to get some guidance from you. We have had an allegation of sexual harassment made by a female member of management toward a vendor. The allegations were made Thursday at the end of the day and the vendor was escorted off of the property. I have obtained statements and interviewed several staff members regarding this issue and would like to know from you what the next step(s) should be. Since the offending party is a vendor and not an employee I want to make sure that this is handled appropriately.

Please let get back to me as soon as you have an opportunity.

Thank you.

Sincerely,

Linda Mengelkamp
Administrative Office Manager
Lake Metropolitan Housing Authority
lmengelkamp@lakemetrohousing.org
440-354-3347 x-29

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

## Conley, Sandy

| | |
|---|---|
| **From:** | Linda Mengelkamp [lmengelkamp@LakeMetroHousing.org] |
| **Sent:** | Monday, May 10, 2010 3:43 PM |
| **To:** | Conley, Sandy |
| **Subject:** | Document1 |
| **Attachments:** | Doc1.docx |

Please review.

-LM

**Conley, Sandy**

| | |
|---|---|
| **From:** | Linda Mengelkamp [lmengelkamp@LakeMetroHousing.org] |
| **Sent:** | Tuesday, May 11, 2010 12:35 PM |
| **To:** | Conley, Sandy |
| **Subject:** | Harassment Incident |

**Importance:**      High

**Attachments:**      Scanned from a Xerox multifunction device001.pdf



Scanned from a
Xerox multifunc...      Per your request, here are the incident reports I collected.  If you would like, I can also forward you my notes on the process.  Just let me know.

Thanks,
Linda

Linda Mengelkamp
Administrative Office Manager
Lake Metropolitan Housing Authority
lmengelkamp@lakemetrohousing.org
440-354-3347 x-29

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain private, confidential, and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, employee, or agent responsible for delivering this message, please contact the sender by reply e-mail and destroy all copies of the original e-mail message.

-----Original Message-----
From: Scanner@lakemetrohousing.org [mailto:Scanner@lakemetrohousing.org]

Sent: Tuesday, May 11, 2010 12:33 PM
To: Linda Mengelkamp
Subject: Scanned from a Xerox multifunction device

1

Please open the attached document. It was scanned and sent to you using a Xerox multifunction device.

For more information on Xerox products and solutions, please visit http://www.xerox.com

2

May 10, 2010

Recommendations regarding Harassment Incident April 29, 2010 submitted to Executive Director, Steven K. Knotts with copies of the corresponding incident reports.

The following recommendations are submitted as a result of the investigation into allegations of sexual harassment by Erica Peavy, Public Housing Manager, against Scott Gleason, MCS/PHA-Web Vendor onsite for training April 27-29, 2010. The allegations have been investigated and it is my opinion that Mrs. Peavy's claims have been substantiated enough to warrant action on the part of LMHA. I recommend the following:

1. Mr. Gleason must not be allowed on LMHA property for any reason.
2. MCS/PHA-Web provide LMHA with an alternate support/training contact for future service needs.
3. All staff hired since Clemens-Nelson was last onsite should be required to view the HR training video from that training. Upon completion of this review, all in attendance will be required to sign acknowledgment. All other staff members will be given the opportunity to re-review this training as well. An alternative to this would be to have Clemens-Nelson provide onsite training on this topic.
4. I am disturbed by the lack of impartiality offered at the onset of this investigation. Specifically the meeting Mr. Knotts had with both Mr. Gleason and Finance Manager Tom Huth immediately following notification of the incident. It is recommended that the Executive Director be required to re-review the HR Training provided by Clemens-Nelson and a sign-off be placed in his personnel file acknowledging review and understanding of LMHA's anti-discrimination and anti-harassment policies.
5. I further recommend that all reports of inappropriate behavior, whether verbal or written, be given appropriate consideration, that they be maintained in a permanent vendor file (i.e. the contract file), and that such reports be considered prior to allowing any vendor on LMHA property. My investigation revealed that several employees at LMHA had expressed concerns over inappropriate stares from Mr. Gleason during his previous visit to LMHA.
6. It is imperative for the integrity of LMHA that this incident in no way reflect negatively upon Mrs. Peavy or anyone else involved in the investigation and as such, there can be zero tolerance for any retaliation or targeting against her as a result of this investigation and/or its outcome and corresponding recommendations.

Linda Mengelkamp
Administrative Office Manager
Lake Metropolitan Housing Authority

**From:** Steve Knotts
**Sent:** Saturday, May 15, 2010 12:06 PM
**To:** Conley, Sandy
**Cc:** Bell, Robin
**Subject:** RE: LM final
Hi Sandy,

As discussed, I have spoken to our legal counsel and hope that Robin and Richard can speak today. If not then Monday morning. If not I am preparing both the paid admin leave notice and the termination packages so we can go either direction on Monday.

Also if possible I would prefer the terms a "gender issue" or "male vs. female" regarding the false claims being made by folks here.

Thanks,

Steve

**From:** Conley, Sandy [mailto:SConley@clemansnelson.com]
**Sent:** Friday, May 14, 2010 11:24 PM
**To:** Steve Knotts
**Cc:** Bell, Robin
**Subject:** RE: LM final
Steve:

I would suggest that you place the employees on paid administrative leave for Monday and Tuesday so that we have the appropriate time to prepare for the terminations. Based upon my knowledge and experience, I do not believe that you can grant the employees 2 days of paid leave in lieu of a predisciplinary conference without subjecting the Agency to possible litigation. However, as I am not an attorney, I am recommending that Robin Bell from our firm confer with you and your legal counsel on these matters. I will forward what you have sent me to Robin.

Also, I think some time needs to be spent on presenting the violations without automatically disclosing the written statements that have been provided to you. Due to the nature of what has been going on, including the the allegation of 'girls being treated differently than boys', I believe it would be prudent to take the time to assure that we comply with policy and take whatever steps are necessary to be able to defend the actions, and to also consider the "fears" expressed by the other employees.
Please feel free to call on Saturday as we discussed.
Thanks, Sandy

**From:** Steve Knotts [mailto:SKnotts@LakeMetroHousing.org]
**Sent:** Fri 5/14/2010 10:29 PM
**To:** Conley, Sandy
**Subject:** LM final
Hi Sandy,
Please find the attached for Linda.
Thanks,
Steve

**Case No.**
**1:11-CV-02589**

**PLAINTIFF 15**